Filed 9/23/20 P. v. Moore CA2/8
Opinion on remand from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B286405 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA095941) |
| v. | |
| JAMES RONNIE MOORE, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Suzette Clover, Judge. Conditionally reversed and remanded with directions.

Laurie Wilmore, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Zee Rodriguez and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant James Ronnie Moore was convicted by jury of making criminal threats and exhibition of a deadly weapon and sentenced to eight years in prison. Defendant raised numerous appellate challenges including that he should be considered for mental health diversion pursuant to Penal Code section 1001.36, a new statute enacted after his 2017 conviction.

In our original unpublished opinion filed October 7, 2019, we affirmed defendant's conviction, concluded Penal Code section 1001.36 did not apply retroactively and remanded for the limited purpose of allowing the trial court the opportunity to exercise its discretion to strike the five-year enhancement pursuant to section 667, subdivision (a)(1).

Defendant filed a petition for review with the Supreme Court. The Supreme Court granted review and deferred further consideration of the matter pending its disposition in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). After the issuance of its decision in *Frahs*, the Supreme Court, by order dated August 19, 2020, transferred the matter to this court with directions to vacate our original decision and reconsider the cause in light of *Frahs*.

Having done so, we again reject defendant's claims of trial error. However, in light of *Frahs*, we conclude a "conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing" pursuant to Penal Code section 1001.36 is warranted. (*Frahs*, *supra*, 9 Cal.5th at p. 640.)

**FACTUAL AND PROCEDURAL BACKGROUND**

Sometime around 9:00 p.m. on March 22, 2015, Michael Petroff went to a gas station on Colorado Boulevard in Pasadena to speak with Joseph Khouri, an employee at the station, about having a mechanic look at a car Mr. Petroff wanted to buy.

Mr. Petroff and Mr. Khouri were talking inside the mechanic's area of the station which is largely enclosed by glass windows and doors. The doors were locked as was usual at that time of night.

As Mr. Petroff and Mr. Khouri were talking, defendant approached the glass windows several times. He came "up to the window, very close" and appeared to be angry. Mr. Khouri believed defendant was drunk. Mr. Khouri was familiar with defendant and told Mr. Petroff that defendant was homeless and regularly came to the gas station. For years, defendant had been sleeping outside the gas station and sometimes he was allowed to use the bathroom. Mr. Khouri believed defendant was an "excellent person" when he was sober, but he acted "crazy" and "out of control" when he drank alcohol. Defendant sometimes harassed customers at the station, and one time he had threatened a mechanic with a knife.

Mr. Petroff was very concerned and "shocked" by defendant's behavior because he was waving, in a threatening way, a "large knife" that looked like a meat cleaver or butcher knife. Defendant, who appeared to be looking primarily at Mr. Petroff, said "I'm going to kill you" or "I could kill you with this" or something to that effect. Defendant threatened Mr. Petroff twice while waving the knife and using profanities, including calling him a "mother f----r."

Mr. Petroff who, according to Mr. Khouri, looked scared and nervous, did not feel it was safe to go outside the station. Mr. Khouri was not nervous because of his past experience with defendant and he thought it best to wait to see if defendant would just go away peacefully. However, Mr. Khouri had never seen defendant this angry. Therefore, both men decided to stay inside

the station.  Mr. Petroff believed defendant was probably not a physical threat to him so long as he stayed locked inside the station with Mr. Khouri.  Yelling through the glass windows, Mr. Petroff gave defendant several warnings, telling him to go away or he would call the police.  Defendant kept coming back to the window.  After the third time, Mr. Petroff called 911 on his cell phone and waited inside until the police arrived.

Within a few minutes, police officers from the Pasadena Police Department arrived at the gas station.  Officer Ryan Castillo was one of the responding officers.  The officers detained defendant who was sitting at the side of the gas station when they arrived.  Defendant was drinking a beer, his eyes were bloodshot, and his breath smelled of alcohol.  Defendant told Officer Castillo that he was only trying to get the key to the bathroom.

Officer Castillo spoke with Mr. Petroff.  He reported he had been scared by defendant's behavior and called 911 because he did not believe he could safely go outside to his car and leave. Mr. Khouri was not interviewed because he told Officer Castillo he did not want to get involved.  A knife, approximately seven inches long, was recovered in some bushes near the station and placed into evidence.

Defendant was charged by information with making criminal threats (Pen. Code, § 422, subd. (a); count 1), and misdemeanor exhibition of a deadly weapon (§ 417, subd. (a)(1; count 3).  (Count 2, assault with a deadly weapon, was dismissed by the court at the preliminary hearing.)  As to count 1, it was alleged defendant personally used a deadly and dangerous weapon (a knife) in the commission of the offense (§ 12202, subd. (b)).  It was further alleged that defendant had suffered a

4

prior serious or violent felony within the meaning of section 667, subdivision (a)(1) and the "Three Strikes" law (§ 667, subds. (b)-(j), § 1170.12).

At a pretrial hearing in September 2015, defense counsel declared a doubt as to defendant's competence. The trial court suspended the proceedings and appointed a doctor (Dr. Rothberg) to examine defendant, setting October 7, 2015 as the return date. We reserve a more detailed discussion of the facts related to the competency hearing to part 2 of the Discussion, *post*.

When the criminal proceedings were resumed in October 2015, the court entertained a *Marsden* (*People v. Marsden* (1970) 2 Cal.3d 118) request from defendant at which defendant also made references to proceeding in propria persona. We reserve a more detailed discussion of the facts related to these requests to part 3 of the Discussion, *post*.

The case proceeded to a jury trial in January 2016. Mr. Petroff, Mr. Khouri and Officer Castillo testified to the above facts. Both Mr. Petroff and Mr. Khouri identified defendant in court as the person who had been brandishing the knife that evening.

During Mr. Petroff's testimony, a recording of the 911 call was played for the jury. The transcript of the call was consistent with Mr. Petroff's and Mr. Khouri's trial testimony, referencing a homeless African-American man brandishing a knife and acting in a threatening manner.

Detective Timothy Bundy testified he was assigned the case as lead detective. Sometime after the incident, Detective Bundy spoke with Mr. Petroff to go over the statement he gave to Officer Castillo at the scene. The conversation was recorded and the recording was played for the jury. In the conversation,

Mr. Petroff confirmed he had never seen defendant before that night, defendant was brandishing a knife and acting in "a very aggressive" and "threatening" manner, defendant was giving them "the finger" and cursing, and Mr. Petroff called the police because he believed if he tried to leave the station, defendant might have injured or killed him. Mr. Petroff said defendant did not specifically say he would use the knife if he came outside, but "the inference was unmistakable."

Detective Bundy also followed up with Mr. Khouri who said defendant had been waving a knife around and cursing through the window at Mr. Petroff. Detective Bundy spoke with the owner of the gas station and recovered the video footage from the security cameras. The video footage was played for the jury. It showed defendant approaching the glass windows at the station three times holding a knife.

The jury found defendant guilty of criminal threats and misdemeanor exhibition of a deadly weapon and found true the personal use of a deadly weapon allegation. Defendant waived his right to a jury trial on the prior allegation.

On February 8, 2016, the court suspended the criminal proceedings a second time, based on defense counsel declaring a doubt as to defendant's competence to proceed to sentencing. Defendant was examined by three doctors. In March 2017, the court found defendant competent to proceed based on the doctors' reports and resumed the criminal proceedings. The court held another *Marsden* hearing and denied defendant's request for substitute counsel.

At the conclusion of the *Marsden* hearing, defendant said that if he could not get a new lawyer appointed then "I want my *Faretta*." (*Faretta v. California* (1975) 422 U.S. 806.) The court

cautioned defendant that self-representation was not a good idea and not in his best interests, but if he wanted to pursue it, he would need to agree to be examined again for a determination if he was competent to do so and waive time with respect to his sentencing hearing.  Defendant agreed.

When the parties returned in July 2017, the court stated on the record that the doctor found defendant competent to represent himself.  The court asked defendant if he still wished to proceed to sentencing as his own attorney and defendant said yes.  The court again advised defendant that it was not in his best interest to proceed in propria persona because of the difficulties in doing so, but defendant insisted he wanted to represent himself.  The court granted defendant's *Faretta* request and relieved counsel.  Defendant said he wanted copies of transcripts.  He agreed to waive time and the court continued the sentencing hearing.

At the continued hearing in November 2017, the court held the priors trial and found true the allegation that defendant suffered a prior conviction in 1994 for burglary for which he served time in prison.  The court then heard and granted defendant's motion to strike his prior conviction for purposes of the Three Strikes law.

The court also heard argument on defendant's motion for new trial.  After allowing defendant wide latitude to argue his motion, the court denied the request for a new trial.

The court sentenced defendant to a state prison term of eight years calculated as follows:  a midterm of two years on the base count (count 1), plus a consecutive one-year term for the deadly weapon enhancement, and a consecutive five-year term for the prior conviction pursuant to Penal Code section 667,

subdivision (a)(1).  The court imposed and stayed a six-month term on count 3 and awarded defendant 1,166 days of presentence custody credits.

The court imposed a court security fee of $40, a criminal conviction assessment of $30, a $300 victim restitution fine and a $300 parole revocation fine.  The court ordered that all fines and fees were to be "suspended given [defendant's] medical issues."

Following remand from the Supreme Court, respondent submitted a supplemental letter brief conceding that defendant is entitled to a limited remand for purposes of the trial court conducting an eligibility hearing pursuant to Penal Code section 1001.36.  Defendant did not submit a supplemental letter brief.

**DISCUSSION**

1.    **Penal Code Section 1001.36**

Penal Code section 1001.36 was enacted in June 2018, during the pendency of this appeal.  It authorizes the diversion of certain alleged offenders into mental health treatment programs in lieu of criminal prosecution.  (§ 1001.36, subd. (a) [court may "grant pretrial diversion to a defendant pursuant to this section if the defendant meets all of the requirements specified in paragraph (1) of subdivision (b)"].)

*Frahs* concluded that Penal Code section 1001.36 applies retroactively because it mitigates the possible punishment for a specific class of offenders with certain enumerated mental health conditions and there is no clear contraindication of legislative intent.  (*Frahs*, *supra*, 9 Cal.5th at pp. 630-637; see also *In re Estrada* (1965) 63 Cal.2d 740, 742-748 [an amendatory statute lessening punishment for a crime is presumptively retroactive, absent clear legislative intent for prospective application, and

8

applies to all defendants whose judgments are not final at the time the statute becomes effective].)

*Frahs* explained that, in light of the retroactivity of the statute, "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Frahs*, *supra*, 9 Cal.5th at p. 640.)

Here, as respondent concedes, at least one of the psychiatrists who examined defendant determined that, while he was competent to stand trial, he nonetheless suffered from mental illness consistent with schizophrenia or schizoaffective disorder. Both of these disorders are enumerated at Penal Code section 1001.36, subdivision (b)(1)(A).

Additionally, defendant was not convicted of any of the disqualifying offenses enumerated in subdivision (b)(2) of Penal Code section 1001.36.

We find defendant is therefore entitled to a conditional limited remand to allow the trial court the opportunity to conduct a mental health diversion hearing in accordance with Penal Code section 1001.36. If the trial court finds that defendant suffers from a qualifying mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets all of the statutory criteria set forth in section 1001.36, then the court may grant mental health diversion in accordance with the statutory scheme. If defendant successfully completes diversion, then the court shall dismiss the charges.

However, if the court determines that defendant does

not meet the criteria under Penal Code section 1001.36, or if defendant does not successfully complete mental health diversion, then his conviction and sentence shall be reinstated.

In the event defendant's conviction is reinstated, we discuss and resolve defendant's other appellate contentions. As in our original opinion, we reject his claims of error, except we find that the court may exercise its discretion to strike the five-year enhancement imposed pursuant to Penal Code section 667, subdivision (a)(1) as discussed in part 9, *post*.

## 2. The First Competency Hearing

Defense counsel first declared a doubt during pretrial proceedings in September 2015. The court suspended proceedings and, after a doctor found him competent, reinstated proceedings in October 2015. After trial, before sentencing, defense counsel again declared a doubt in February 2016. The court again suspended proceedings and, after he was found competent, reinstated proceedings in March 2016. Defendant's competence was examined a third time before the court granted his *Faretta* motion.

Defendant makes no claim of error regarding the two posttrial competency hearings. He claims only that at the first hearing, the trial court prejudicially erred in failing to expressly find him competent to stand trial.

A defendant is presumed competent to stand trial, unless the contrary is established by a preponderance of the evidence. (*People v. Campbell* (1976) 63 Cal.App.3d 599, 608; see also Pen. Code, § 1369, subd. (f).) "A defendant is deemed incompetent to stand trial if he lacks ' " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [or] a rational as well as factual

10

understanding of the proceedings against him [or her].' " ' "
(*People v. Lightsey* (2012) 54 Cal.4th 668, 690; accord, *People v. Mickel* (2016) 2 Cal.5th 181, 194-195; see also § 1367, subd. (a) ["A defendant is mentally incompetent . . . if . . . the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."].)

In reviewing a finding of competency, we are governed by the substantial evidence test. (*People v. Marshall* (1997) 15 Cal.4th 1, 31 (*Marshall*).) "Evidence is substantial if it is reasonable, credible, and of solid value." (*Ibid.*) A review of the complete record here reveals substantial evidence supports the court's written finding of competency.

After counsel declared a doubt the first time at a pretrial hearing, the court suspended proceedings, a doctor examined defendant and submitted his report, and the parties returned to court the next month. Defense counsel reported that Dr. Rothberg "came back with the opinion that [defendant] is not 1368." The court and counsel then discussed setting a trial date. Defense counsel said, "I believe at this point we are . . . at 47 of 60." The court responded, "I thought it went to 0 of 60." The prosecutor said, "When a doubt is declared and they come back, it's 0 of 60."

Defense counsel then said defendant wanted a *Marsden* hearing. Before clearing the courtroom to conduct the *Marsden* hearing, the court asked if there was a report finding defendant competent for purposes of self-representation. Defense counsel said the issue was addressed in Dr. Rothberg's report. The court then conducted a lengthy *Marsden* hearing, discussing various issues and concerns raised by defendant. The *Marsden* request was denied. The court's minute order for that date includes the following: "The court has read and considered a report.

11

Defendant is found competent. [¶] Criminal proceedings are reinstated."

It is well established that "once a trial court has ordered a competency hearing pursuant to [Penal Code] section 1368, the court lacks jurisdiction to conduct further proceedings on the criminal charge or charges against the defendant until the court has determined whether he is competent." (*People v. Marks* (1988) 45 Cal.3d 1335, 1337 (*Marks*).)

Defendant relies on *Marks* in asserting the trial court failed to make an express finding of competency and improperly deferred to defense counsel's assessment of Dr. Rothberg's report. We are not persuaded by defendant's characterization of the first competency hearing and find *Marks* is inapposite.

The trial court in *Marks* erred by agreeing to the defense counsel's request to take the competency hearing off-calendar without saying anything to suggest the court found defendant competent. The court went along with the defense counsel's request and failed to hold a hearing or make any written or oral ruling as to the defendant's competency. (*Marks, supra*, 45 Cal.3d at p. 1339.)

*Marks* stated: "[N]o 'magic words' are required of the trial court. We hold, however, that the constitutional right to due process, [Penal Code] section 1369, and our holding in [*People v. Hale* (1988) 44 Cal.3d 531], require, at a minimum, that the trial court *expressly and unmistakably state on the record*, either orally or in writing, its determination as to whether the defendant is mentally competent to stand trial." (*Marks, supra*, 45 Cal.3d at p. 1343.)

Here, right after defense counsel reported the doctor found defendant was competent (he "is not 1368"), counsel discussed the

trial schedule with the court. There is no doubt that the court and counsel all understood the court found defendant was competent, because they agreed that date was 0 of 60, meaning defendant was entitled to be brought to trial within 60 days of that date. This highly experienced trial judge and both counsel plainly understood that time does not run for the purpose of protecting defendant's speedy trial rights while a defendant is incompetent.

When defense counsel asked for a *Marsden* hearing, the court wanted to know what the expert had to say about defendant's competency to represent himself, counsel pointed the court to the expert's report, and the court held a *Marsden* hearing. Defense counsel would not have requested a *Marsden* hearing if counsel had been uncertain whether the court found defendant was competent to stand trial. Likewise, the court would not have held a *Marsden* hearing if the court had not found defendant was competent to explain to the court why he wanted new counsel. The minutes of the proceedings state the court read the expert's report, after which the court found defendant competent and reinstated proceedings. In the criminal courts, judges and lawyers who frequently appear before them often speak to one another in shorthand. Recognizing this, the *Marks* court said no magic words are required to reinstate proceedings so long as the trial court record unmistakably shows whether the trial court made a competency finding. That is the case here.

### 3. The Pretrial *Faretta* Motion

Defendant contends it was structural error for the trial court to deny his oral pretrial request to represent himself. We disagree.

13

The Sixth Amendment right to self-representation articulated in *Faretta* is not absolute. (*People v. Butler* (2009) 47 Cal.4th 814, 825.) "Unlike the right to representation by counsel, the ' "right of self-representation is waived *unless defendants articulately and unmistakably demand to proceed pro se.*" ' " (*People v. Danks* (2004) 32 Cal.4th 269, 295, italics added.)

In order to protect the fundamental constitutional right to the effective assistance of counsel, "one of the trial court's tasks when confronted with a motion for self-representation is to determine whether the defendant truly desires to represent himself or herself." (*Marshall, supra,* 15 Cal.4th at p. 23.) In so doing, "courts must draw every inference against supposing that the defendant wishes to waive the right to counsel." (*Ibid.*) Courts "should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay" may be denied without running afoul of the Constitution. (*Ibid.*)

"In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo." (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

The record here demonstrates that defendant did not make a clear and unequivocal request to represent himself at trial. At the October 7, 2015 *Marsden* hearing, defendant expressed his dissatisfaction with his appointed counsel, primarily for allegedly

failing to subpoena the witnesses defendant believed were important to his defense. The court explained to defendant that the victims and other witnesses would not be subpoenaed until it was time for trial. Defendant continued to assert that his attorney was not representing him properly. Defendant said "I don't want anyone on this" and "I want to handle it [the subpoenas] when that happens."

These comments are followed by a long colloquy addressing primarily various medical complaints by defendant, as well as comments by defense counsel attempting to explain the efforts he had made on the case and his efforts to communicate, unsuccessfully apparently, with defendant.

Defendant then interjected, "I want to exercise my *Faretta* rights, ma'am." However, the conversation then returned to a discussion of the actions taken by his counsel, including both trial counsel and counsel who handled defendant's preliminary hearing. Ultimately, defendant's comments returned to his desire to subpoena the relevant witnesses.

The court said it sounded like defendant just wanted to get the case set for trial, and defendant confirmed that is what he wanted, but he did not want to be represented by the public defender's office because it was "not going to work." The court told defendant he could not paint all of the deputy public defenders with the same "broad brush" but had to point out proper bases for substituting counsel and he had not done so.

Defendant said if he could not exercise his *Faretta* rights, he wanted another attorney. He wanted to have an attorney of his "own color." The court advised defendant that was not a proper basis for substituting counsel.

15

Defendant said counsel had made unspecified misrepresentations to him and that "last time [he] was [in court]" he asserted his *Faretta* rights. The court responded by telling defendant, "meaning no disrespect at all—so you understand that at—at the last court appearance, you weren't making any sense at all" thus necessitating the proceedings being suspended to allow defendant to be examined for competence. The court told defendant that it could set the case for trial if that is what he wanted, and the witnesses he thought were important could then be subpoenaed. Defendant said yes, he wanted to subpoena Mr. Khouri (Joe) and another gas station employee that had worked the morning of the incident (Sam).

The *Marsden* hearing was concluded, the proceedings were resumed and a trial date set. There were no further statements by defendant stating any desire to proceed in propria persona.

Defendant did not make an unequivocal request to represent himself. (See, e.g., *People v. Tena* (2007) 156 Cal.App.4th 598, 608 [the defendant's remarks about self-representation after denial of *Marsden* request were "impulsive reactions" to "frustrated attempts to secure an attorney who would subpoena the witnesses that he desired, rather than unequivocal *Faretta* requests"]; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205, fn. 3 [request to self-represent equivocal where after denial of *Marsden* request, defendant asked to proceed in pro se].)

4. **Count 1—Criminal Threats**

Defendant contends there is insufficient evidence supporting his conviction for making criminal threats in violation of Penal Code section 422. We are not persuaded.

16

We review the evidence according to the familiar standard. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 ["In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."].)

The record contains ample evidence supporting the jury's conclusion that defendant violated Penal Code section 422, the elements of which are:  "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances."  (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

The testimony of Mr. Petroff and Mr. Khouri, which was largely corroborated by the security camera footage, established that three times, defendant approached the glass doors of the gas station garage and waved a large knife in a threatening manner.

17

Both men testified that defendant was angrily cursing at them and he threatened to kill Mr. Petroff at least twice. Mr. Khouri also said defendant appeared drunk and that he knew him to act crazy and out of control when he was drunk and that he had never seen him that angry before. Mr. Khouri testified that Mr. Petroff appeared nervous and scared. Mr. Petroff was unequivocal that he was shocked and intimidated by defendant's behavior. He feared for his safety and did not believe he could safely leave the locked garage and therefore had to call the police to intervene.

We are not persuaded by defendant's argument that any fear experienced by Mr. Petroff was only "fleeting or transitory." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) Defendant's angry and threatening behavior lasted for several minutes, during which time Mr. Petroff remained inside the locked garage until the police arrived because he feared defendant might follow through on his threats.

**5.    The Failure to Instruct on Attempt**

Defendant contends the trial court committed prejudicial instructional error by failing to instruct on the lesser included charge of attempted criminal threats. Defendant concedes he did not request the instruction, but contends his substantial rights were affected (Pen. Code, § 1259) and that the court had a sua sponte duty to instruct on the lesser included charge. The contention is without merit.

" 'A trial court has a sua sponte obligation to instruct the jury on any uncharged offense that is lesser than, and included in, a greater charged offense, but *only if there is substantial evidence supporting a jury determination that the defendant was in fact guilty only of the lesser offense.*' " (*People v. Rangel* (2016)

18

62 Cal.4th 1192, 1224-1225, italics added; accord, *People v. Thomas* (2012) 53 Cal.4th 771, 813.)

As we already explained in part 4, *ante*, there was substantial evidence defendant engaged in threatening behavior that caused Mr. Petroff to experience sustained fear within the meaning of Penal Code section 422.  No reasonable construction of the record supports the conclusion that defendant was guilty *only* of attempted criminal threats.  As such, no sua sponte duty to instruct with the lesser included charge arose.

**6.    The Deadly Weapon Enhancement**

Defendant contends there was insufficient evidence to support the enhancement for using the knife as a deadly weapon.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*).)  "The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432.)  The reviewing court's "opinion that the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime does not warrant a reversal of the judgment." (*People v. Hill* (1998) 17 Cal.4th 800, 849.)  Reversal is only warranted when it clearly appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*Bolin*, at p. 331.)

"As used in [Penal Code] section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is

19

used in such a manner as to be capable of producing and likely to produce, death or great bodily injury. [Citation.] Some . . . objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citations.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.) The question is whether the weapon was used in a way that was likely to cause significant or substantial injury. (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087.)

Here, the evidence supports the jury's conclusion defendant used the knife as a deadly weapon. Several times, defendant walked right up to the window of the mechanic's area where Mr. Petroff was talking with Mr. Khouri. He appeared to be angry and drunk. He was waving a seven-inch long knife that looked like a meat cleaver or butcher knife in a threatening way while he told Mr. Petroff "I'm going to kill you" or "I could kill you with this." On this record, the jury could reasonably conclude the knife was used as a deadly weapon. (See *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1437 [where defendant menacingly displayed gun tucked into his waistband and ordered the victim to give him her purse, "the jury was entitled to take defendant at his word, so to speak, and infer from his conduct that the pistol was a real, loaded firearm and that he was prepared to shoot the victim with it if she did not comply with his demand"]; Cf. *In re*

20

*B.M.* (2018) 6 Cal.5th 528, 536 [no substantial evidence that butter knife was used as a deadly weapon where it was mildly pressed against victim's blanketed legs, and not against any vulnerable or exposed part of the body such as head, face or neck].)

Defendant also asserts the court prejudicially erred by failing to instruct the jury regarding the use of a deadly weapon. Respondent concedes the trial court had a sua sponte duty to give CALCRIM No. 3145 because it defines the elements of the enhancement. We agree with respondent that the error was harmless beyond a reasonable doubt. (*People v. Mil* (2012) 53 Cal.4th 400, 417.) There was compelling evidence that defendant, who was drunk and angry, brandished a large knife while telling Mr. Petroff he intended to kill him with it. The jury could only have reasonably concluded on this record that defendant used a deadly weapon.

## 7. The Instruction on Count 3

Defendant asserts the court erred by using the term "knife" instead of "deadly weapon" when instructing the jury on misdemeanor exhibition of a deadly weapon. Defendant has forfeited this contention by failing to object in the trial court. (*Bolin*, *supra*, 18 Cal.4th at p. 328.) We are not persuaded the modification affected defendant's substantial rights. If there were any error, it was harmless, as the knife was the only deadly weapon to which any witness testified, and there could have been no jury confusion on that point.

## 8. The Motion for New Trial

Defendant contends the court erred in denying his nonstatutory motion for new trial based on the grounds of ineffective assistance of counsel. We disagree.

21

"Although ineffective assistance of counsel is not among the grounds enumerated for ordering a new trial under Penal Code section 1181, motions alleging ineffective assistance are permitted pursuant to 'the constitutional duty of trial courts to ensure that defendants be accorded due process of law.' " (*People v. Callahan* (2004) 124 Cal.App.4th 198, 209.)

Our review of the court's ruling on a nonstatutory motion for new trial is de novo. "A defendant's claim that he or she was deprived of the constitutional right to effective assistance of counsel 'presents a mixed question of fact and law,' and we accordingly review such question independently. [Citation.] We accord deference to the trial court's factual determinations if supported by substantial evidence in the record but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76.)

The ineffective assistance claim is based almost exclusively on defendant's claim that Mr. Petroff and Mr. Khouri were liars and that trial counsel failed to impeach them. Ordinarily, tactical trial decisions by counsel, such as the manner of pursuing cross-examination of witnesses, are afforded substantial deference. (*People v. Hayes* (1990) 52 Cal.3d 577, 621.) " 'A reviewing court will not second-guess trial counsel's reasonable tactical decisions.' " (*People v. Riel* (2000) 22 Cal.4th 1153, 1185; accord, *People v. Boyette* (2002) 29 Cal.4th 381, 424.)

Defendant fails to articulate any reasonable basis for second-guessing trial counsel's decisions on how to cross-examine Mr. Petroff and Mr. Khouri. Defendant's primary complaint against counsel is based on an apparent typographical error in

22

one of the police reports.  In a paragraph discussing both Mr. Petroff and Mr. Khouri, there is a sentence stating that Mr. Petroff reported defendant sometimes makes threats and gets angry but he did not believe defendant would attack him. While attributed to Mr. Petroff, the statement is consistent with the testimony Mr. Khouri gave at trial and is *not* consistent with anything Mr. Petroff ever said.  It is the statement of someone who had regular contact with defendant, like Mr. Khouri.  In contrast, it is not consistent with Mr. Petroff's trial testimony, pretrial interview or 911 call that Mr. Petroff had never seen defendant before that night—a fact which defendant does not dispute.  Defendant nevertheless insists it was impeachment that should have been pursued by trial counsel to show Mr. Petroff was a liar.  Defendant has not met his burden of demonstrating ineffective assistance of trial counsel in the cross-examination of the two main witnesses.

The remaining claims of ineffective assistance are similarly without merit and do not warrant further discussion.

## 9. Penal Code Section 667, Subdivision (a)(1)

Defendant contends, and respondent concedes, that the trial court may exercise its newly granted discretion under Senate Bill No. 1393 (2017-2018 Reg. Sess.).  As relevant here, Senate Bill No. 1393 amended provisions of Penal Code section 667 and section 1385, granting discretion to trial courts to strike a prior serious felony conviction in connection with imposition of the five-year enhancement set forth in section 667, subdivision (a)(1).  (Stats 2018, ch. 1013, § 1, § 2.)  The amendatory provisions became effective January 1, 2019, during the pendency of this appeal.

At the time defendant was sentenced in November 2017, imposition of a consecutive five-year term pursuant to Penal Code section 667, subdivision (a)(1) was mandatory. In *In re Estrada, supra,* 63 Cal.2d at pages 744-745, the California Supreme Court held that, absent evidence of contrary legislative intent, it is an "inevitable inference" that the Legislature meant for new statutes that reduce the punishment for certain prohibited acts to apply retroactively to every case not yet final on appeal. It is undisputed that defendant's appeal was not final at the time the new provision went into effect. We agree with the parties that defendant is therefore entitled to the benefit of the amendatory provision.

At oral argument, defense counsel advised us that the trial court exercised its discretion while this appeal was pending to strike the five-year enhancement, as evidenced by an amended abstract of judgment filed June 6, 2019. The trial court had no jurisdiction to strike the enhancement while the case was pending appeal. We express no displeasure with the court's decision to strike the enhancement while this appeal was pending. However, if the trial court concludes that defendant is not eligible for mental health diversion under Penal Code section 1001.36 or if defendant's conviction is reinstated because he fails to complete diversion, then the court shall have the opportunity to exercise its discretion once again on the five-year prior after the remittitur has formally restored jurisdiction in the trial court.

## DISPOSITION

The conviction and sentence of defendant and appellant James Ronnie Moore is conditionally reversed for a limited remand with the following instructions:

24

If the trial court finds that defendant suffers from a qualifying mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets all of the statutory criteria set forth in Penal Code section 1001.36, then the court may grant mental health diversion in accordance with the statutory scheme. If defendant successfully completes diversion, then the court shall dismiss the charges.

However, if the court determines that defendant does not meet the criteria under Penal Code section 1001.36, or if defendant does not successfully complete mental health diversion, then his conviction and sentence shall be reinstated. In the event defendant's conviction is reinstated, the trial court shall exercise its discretion whether to strike the five-year enhancement pursuant to Penal Code section 667, subdivision (a)(1) and shall thereafter prepare and forward a new abstract of judgment to the Department of Corrections and Rehabilitation.

GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


WILEY, J.